UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

WILLIAM F. BROWN, JR., )
)
    Plaintiff, )
  vs. ) Case No. 2:12-cv-02129-GMN-NJK
)
BECHTEL NEVADA CORPORATION, *also* ) **ORDER**
*known as* National Security Technologies, LLC, )
and DOES 1-10 inclusive, )
)
    Defendants. )
)

    Pending before the Court is Plaintiff William F. Brown, Jr.'s ("Plaintiff") Motion to Remand. (ECF No. 8.)  National Security Technologies, LLC, ("NST") a Delaware Corporation contractually obligated to defend any action brought against Defendant Bechtel Nevada Corporation ("Defendant"), removed the action to federal court.  In its removal statement, NST argued that federal question jurisdiction exists because Plaintiff's state law claims were subject to the complete preemption doctrine and implicated substantial federal issues.  Plaintiff disagreed with that assessment and brought this Motion to Remand.  For the reasons discussed below, the Plaintiff's Motion to Remand is GRANTED.

**I.    BACKGROUND**

    This dispute arises from the alleged breach of a Waiver and Release Agreement (the "Settlement Agreement"), which terminated previous litigation between Plaintiff and Defendant. Plaintiff, a Nevada resident, was a member in good standing of the Teamster Union Local 631. Defendant, a Nevada Corporation, was the prime contractor prior to 2006 on the Nevada National Security Site ("NNSS") owned by the United States Department of Energy.  Plaintiff and Defendant were involved in several labor disputes and in 2003 entered into the Settlement

Agreement in which, among other things, Defendant agreed to "provide all prospective employers of [Plaintiff] a neutral reference, which [would] only recite [Plaintiff's] position held, dates of employment and last rate of pay."

In 2006, the work to be done at the NNSS was again offered for competitive bidding, and NST became the prime contractor and assumed responsibility for the management of the NNSS. As part of the transition, Defendant and NST entered into a Transfer Agreement overseen and approved by the Department of Energy's National Nuclear Security Administration. Under the Transfer Agreement, Defendant transferred its files, contracts, and even some employees to NST. One of the contracts transferred was the Project Labor Agreement, a collective bargaining agreement (the "CBA"), with the Teamsters Local 631. In addition to contractual obligations, NST also assumed Defendant's legal liabilities for most on-going litigation as well as any subsequent suit filed against Defendant arising from its role as prime contractor.

While it was prime contractor, Defendant allegedly kept a document entitled "Do Not Hire List." Apparently, the purpose of this list was to prevent the re-hiring of someone with whom Defendant had problems in the past. Plaintiff's name was allegedly added to that list as a result of the labor disputes. Plaintiff further alleges that during the transition between Defendant and NST, Defendant transferred the list to NST. As a result, Plaintiff alleges that NST chose not to hire Plaintiff, despite the fact "he was essentially the only Teamster member with the background and experience for the anticipated employment requisitioned by NST."

Plaintiff filed suit in state court on August 8, 2012 alleging that the transfer of the list constituted a non-neutral reference in violation of the Settlement Agreement. Plaintiff's complaint contained claims for breach of contract, breach of the covenant of good faith and fair dealing, and negligence. NTS filed a petition for removal with this Court on December 13, 2012. Plaintiffs now seek an order remanding the case back to state court.

/ / /

## II. **LEGAL STANDARD**

A motion to remand is the proper procedure for challenging removal. *See Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9th Cir. 2007). If a defendant has improperly removed a case from state court over which the federal district court lacks subject matter jurisdiction, the district court must remand the case to the state court. 28 U.S.C. § 1447(c). A district court must construe the removal statutes strictly against removal and resolve any uncertainty in favor of remanding the case to the state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). This "strong presumption" against removal jurisdiction places the burden on the defendant to establish that removal is proper. *Id*. at 566. However, federal courts look only to a plaintiff's pleadings to determine jurisdiction. *Self v. General Motors Corp.*, 588 F.2d 655, 657 (9th Cir. 1978).

## III. **DISCUSSION**

Initially, the Court notes that under LR 7-2(b), the Response in Opposition to Plaintiff's Motion was due no later than January 12, 2013. However, NTS did not file its response until January 25, 2012. In its Response, NST did not seek the Court's leave to file an untimely motion, and did not seek to explain or even address its own tardiness. Under Local Rule 7-2, the failure of an opposing party to file points and authorities in response to a motion constitutes their consent to the granting of the motion. Thus, because NST neither filed a timely Response nor obtained the Court's leave to file an untimely one, the Court need not consider NST's untimely Response and may presume that NST consents to remand.

Furthermore, Plaintiff's Motion to Remand should also be granted on the merits.[1] A defendant may only remove an action to federal court if the plaintiff could have initially filed the complaint in federal court. 28 U.S.C. § 1441(a). "Absent diversity of citizenship, federal-

---

[1] NST's tardiness notwithstanding, the policy in the Ninth Circuit favors decisions on merits. *See In re Phenylpropanolamine Products Liab. Litig.*, 460 F.3d 1217, 1248 (9th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962)).

question jurisdiction is required." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The existence of this jurisdiction is determined solely by the facts presented on the face of the plaintiff's properly pleaded complaint, and not with reference to the defendant's answer or petition for removal. *Gully v. First Nat'l Bank*, 299 U.S. 109, 113 (1936). Thus, a plaintiff may avoid federal jurisdiction by relying solely on state law in his complaint. *See Great North R. Co. v. Alexander*, 246 U.S. 276, 282 (1918).

In its removal statement, (ECF No. 7), NST brings two arguments to demonstrate that this case could have originally been brought in federal court and is therefore removable. First, NST argues that Plaintiff's contractual claims are completely preempted by the Labor Management Relations Act ("LMRA") and thus a federal question is presented. Second, NST argues that the case would require an examination of the Transfer Agreement, which implicates a significant federal issue. Both arguments, however, are incorrect.

### A. Preemption

Typically, "federal pre-emption is raised as a defense to the allegations in a plaintiff's complaint," and may not provide the basis for removal. *Caterpillar*, 482 U.S. at 392-93. However, certain statutes carry such "extraordinary pre-emptive power," that they "convert[ ] an ordinary state common law complaint into one stating a federal claim." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). Where a federal statute completely pre-empts a state claim and supplants it with a federal one, it renders the claim removable. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23-24 (1983)).

Perhaps the most prominent example of complete preemption, is § 301 of the LMRA. Under this statute, "[s]uits for violation of contract between an employer and a labor organization . . . may be brought in any district court of the United States." 29 U.S.C. § 185(a). In construing this statute's interaction with state law claims, courts have held § 301 completely displaces a

state claim and any contractual claim within the scope of § 301 "is purely a creature of federal law." *Franchise Tax Bd.*, 463 U.S. at 23.  Thus, where § 301 applies, the federal court has federal question jurisdiction and defendant may remove the contract claims to federal court. In addition to direct violations of collective bargaining agreements, Section 301 also preempts claims that are either "founded directly on rights created by collective bargaining agreements" or "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 395.  Courts have held, for example, where a separate agreement is one for employment, which is actually governed by the collective bargaining agreement, or where resolution of a dispute arising under a separate agreement requires the court to interpret terms in the collective bargaining agreement, the separate agreement is preempted. *See e.g., Beals v. Kiewit Pac. Co. Inc.*, 114 F.3d 892, 894 (9th Cir. 1997); *Audette v. Int'l Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1112 (9th Cir. 1999).  In this manner, a plaintiff may not artfully plead around federal jurisdiction by characterizing what actually is a violation of the collective bargaining agreement as a breach of a separate agreement. *See Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (1987).

"Section 301 does not, however, preempt every employment dispute tangentially involving a collective bargaining agreement." *Id*. at 999.  "When the meaning of particular contract terms is not disputed, the fact that a collective bargaining agreement must be consulted for information will not result in § 301 preemption." *Firestone v. Southern Calif. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000).  Thus, separate agreements that do not rely on, or require interpretation of, the collective bargaining agreement are independent of the collective bargaining agreement and do not fall within the ambit of § 301. *See Caterpillar*, 482 U.S. at 395-96.  Because of this independence, these claims properly present questions of state law and are not preempted. *See id.*  Further, where an action of an employer results in violations of both an independent, separate agreement and the collective bargaining agreement, an employee may

choose to avoid federal jurisdiction by omitting the claims arising under the collective bargaining agreement, and plead only the state law claims arising under the separate agreement. *Id*. at 395.

Here, NST has not shown that § 301 should apply. First, Plaintiff's breach of contract claim is premised on the Settlement Agreement, a separate contract defining the post-litigation responsibilities of both Plaintiff and Defendant. The Settlement Agreement is not a contract between an employer and a labor organization, but a separate contract between an employer and a former employee. Second, NST has not demonstrated that the claim under the Settlement Agreement is founded directly on rights created by the CBA, or that resolution of the dispute will substantially depend on analysis of the CBA. Although the Settlement Agreement has terms that relate to employment, the substance of the contract is not that of an employment contract that would actually be governed by the CBA. Additionally, a determination whether the transmittal of the Do Not Hire List was a "non-neutral reference" would not require the Court to interpret the CBA's terms. At most, the CBA would need to be referenced for information, but this is insufficient for § 301 preemption.[2] Finally, although Plaintiff was covered by the CBA during the events that gave rise to this suit, Plaintiff is free to omit or separate any claims that he may have under the CBA and plead only those arising under state law.

Because Plaintiff's claims arise under a separate, independent agreement, they are not preempted by § 301 and there is no federal question jurisdiction. Consequently, removal was improper.

---

[2] NST argues in its Response that the Court is required to interpret the hiring provisions of the CBA to determine whether the rejection of Plaintiff's application was actually the result of the transmittal of the Do Not Hire List. NST notes that the NLRB already determined that NST's decision to not hire Plaintiff was within NST's discretion and did not violate the terms of the CBA. Thus, NST argues, the hiring decision is a precluded issue and prevents Plaintiff from showing he suffered damages as a result of the alleged breach. This flawed logic, however, conflates the CBA and the Settlement Agreement. To prevail on a breach of contract claim under the Settlement Agreement, Plaintiff's burden is simply to show that the Do Not Hire List was the reason for his rejection. Whether or not reliance on the Do Not Hire List constituted a violation of the CBA is immaterial to this inquiry. A non-breach of the CBA does not necessarily equate to a non-breach of the Settlement Agreement.

### B. Federal Issue

Additionally, NST's argument that this Court has jurisdiction because the case turns on a substantial question of federal law is likewise flawed. A state law claim may present a federal question if its resolution is heavily dependent upon the interpretation of a federal statute. *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). NST's Removal Statement, (ECF No. 7), claims that because the Court would have to construe the Transfer Agreement, resolution of the case would require an interpretation of federal law.

However, this argument is fundamentally flawed in two respects. First, according to the pleaded facts, although the Transfer Agreement plays a role in the *factual* explanation of how the Do Not Hire List was communicated from Defendant to NST, the terms of the Transfer Agreement are not in dispute and those terms would not require *legal* interpretation. Simply put, the Transfer Agreement plays too small a role in this dispute for the case's resolution to heavily depend on its interpretation. Second, and perhaps more importantly, a contract between Defendant and NST, even if overseen by the United States government, is not a federal law. Thus, construing the Transfer Agreement is not akin to interpreting federal law. Consequently, there is no substantial federal issue giving rise to jurisdiction and removal was improper.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand is **GRANTED**.

**DATED** this 21st day of February, 2013.

_____
Gloria M. Navarro
United States District Judge